**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RAY GALBRAITH, Individually and on behalf of all others similarly situated, ) ) | Civil Action No. _____ |
| ) | |
| Plaintiff(s), ) | **CLASS ACTION COMPLAINT** |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| LIME ENERGY CO., INC., JOHN O'ROURKE, JEFFREY MISTARZ, and DAVID ASPLUND, ) ) ) | |
| ) | |
| Defendant(s). ) | |
| _____ ) | |

Plaintiff Ray Galbraith ("Plaintiff"), by his undersigned counsel, individually and on behalf of all others similarly situated, alleges the following upon personal knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, among other things: (a) review and analysis of relevant filings made by defendant Lime Energy Co., Inc. ("Lime" or the "Company") and other related parties and non-parties with the U.S. Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by Lime and certain of the Defendants and other related non-parties; (c) review and analysis of other public documents, conference calls and press releases including news articles, shareholder communications and postings on Lime's website concerning the Company's public statements, made by defendants Lime Energy Co., John O'Rourke, Jeffrey Mistarz, and David Asplund (collectively "Defendants") and (d) review of other publicly available information concerning Lime and the Individual Defendants:

**NATURE OF THE ACTION**

1.      This is a federal securities class action against Defendants for violations of the federal securities laws.  Plaintiff brings this action on behalf of a class consisting of all persons and entities other than Defendants (or persons and entities affiliated with Defendants) who purchased Lime common stock between May 14, 2010 and July 17, 2012, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws (the "Class").

2.      On July 17, 2012, the Company made an SEC filing on Form 8-K that made several stunning admissions.  The Company's SEC filing admitted, based upon the results of a partial internal review, that:  (i) a portion of the Company's revenue was improperly recorded – as a result of recording non-existent revenue and/or recording revenue earlier than it should have been recorded; and (ii) the Company's previously issued financial statements on Form 10-K for the fiscal years ended December 31, 2010 and December 31, 2011, and its quarterly report on Form 10-Q for the period ended March 31, 2012, "may no longer be relied upon" and the misreporting may "require restatement of all of the affected financial statements."

3.      Accordingly, Plaintiff alleges that, throughout the Class Period, Defendants made materially false and misleading statements and/or material omissions, that were in effect throughout the Class Period, regarding the Company's business, operational and accounting practices, by failing to disclose, among other things, that:  (i) the Company's financial statements during the Class Period did not accurately state the Company's financial condition and operations, including that they did not accurately state the Company's revenue and earnings; (ii) as a result, the Company's financial results were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and (iii) the Company lacked adequate internal and financial controls.

4.     The fact that Lime announced that it will restate its financial statements in effect during the Class Period, and informed investors that these financial statements should not be relied upon is an admission that they were materially false and misleading when originally issued (APB No. 20, 7-13; SFAS No. 154, 25).

5.     When the truth began to emerge with Lime's July 17, 2012 Form 8-K disclosure, the Company's stock price plummeted $0.91 from its prior trading day close of $2.03 to close on July 17, 2012 at $1.12—a stunning decline of over 44% on unusually heavy trading volume.

6.     Plaintiff and other Class members have suffered significant damage.

## PARTIES

### Plaintiff

7.     Plaintiff purchased Lime common stock on the NASDAQ exchange during the Class Period as set forth in the attached certification.

### Defendants

8.     Defendant Lime is a Delaware corporation.  Lime, formerly known as Electric City Corp., was founded in 1980.  The Company changed its name from Electric City Corp. to Lime Energy Co. in September 2006.

9.     From before the beginning of the Class Period through on or about July 31, 2011, the Company was headquartered in, with its principal executive offices in, Elk Grove Village, Illinois.  Beginning on or about August 1, 2011, the Company's principal executive offices have been located at 16810 Kenton Drive, Huntersville, North Carolina.

10.     Lime provides clean energy solutions that assist clients in the achievement of their energy efficiency and renewable energy goals.  Lime operates in three specific markets: the utility market, the public sector and institutional market, and the commercial and industrial market.  Lime's clients include utilities, energy service companies, government entities,

educational institutions, commercial and industrial businesses, and property owners and managers. Lime's solutions include energy efficient lighting upgrades, energy efficient mechanical and electrical retrofit and upgrade services, water conservation, building weatherization, on-site generation and renewable energy project development and implementation. The Company provides energy solutions across a range of facilities, from high-rise office buildings, distribution facilities, manufacturing plants, retail sites, multi-tenant residential buildings, mixed use complexes, hospitals, colleges and universities, large government sites, and small, single tenant facilities.

11.    Defendant John O'Rourke ("O'Rourke") has served as Lime's President and Chief Executive Officer since May 2011. From February 2010 to May 2011, he served as the Company's Chief Operating Officer. Prior to that, O'Rourke served as President and Chief Executive Officer of Lime's subsidiary, Lime Energy Services Co. (formerly known as Applied Energy Management, Inc.).

12.    Defendant Jeffrey Mistarz ("Mistarz") has served as Lime's Chief Financial Officer since January 2000, Treasurer since October 2000, Executive Vice President since November 2002, assistant secretary since February 2003, and secretary since June 2006. He currently holds all of the above positions

13.    Defendant David Asplund ("Asplund") was Lime's Chief Executive Officer from January 2006 through May 2011. He became the Company's Executive Chairman in or about June 2011.

14.    Defendants O'Rourke, Mistarz, and Asplund are collectively referred to herein as the "Individual Defendants."

15.    Lime and the Individual Defendants are referred to herein as "Defendants."

16.    Each of the Individual Defendants:

(a)      was directly involved in the day-to-day operations of the Company at the highest levels;

(b)      was privy to confidential proprietary information concerning the Company and its business and operations;

(c)      was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(d)      knew, or recklessly disregarded the fact, that the false and misleading statements were being published concerning the Company; and

(e)      approved or ratified these statements in violation of the federal securities laws.

17.     As officers, directors and controlling persons of a publicly-held company whose common stock is and was registered with the SEC pursuant to the Exchange Act, and was traded on the NASDAQ and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and to correct any previously-published statements that were or had become materially misleading or untrue to allow the market price of the Company's publicly-traded stock to reflect truthful and accurate information.

18.     Lime is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

19.     Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts

supporting the allegations contained herein are known only to Defendants or are exclusively within their control.

## JURISDICTION AND VENUE

20.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act') (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

21.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §§1331.

22.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District.  During a majority of the Class Period, Lime maintained its corporate headquarters in this District, and many of the acts charged herein, including the preparation and dissemination of materially false and misleading information (including the Company's SEC filings) occurred in substantial part in this District.

23.     In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## SUBSTANTIVE FACTUAL ALLEGATIONS OF FRAUD

24.     **2010 First Quarter:**  On May 13, 2010, after the close of the markets, Lime both filed its Form 10-Q for the first quarter of fiscal 2010, for the time period ending March 31, 2010, and issued a press release announcing its financial and operating results for the first quarter of fiscal 2010.  The Form 10-Q and press release contained identical material information.

25.     This first quarter 2010 10-Q SEC filing and press release were both published when the Company was headquartered in Elk Grove Village, Illinois.

26.     The Company's Form 10-Q filing for the first quarter of 2010 was signed by Defendants Asplund and Mistarz.

27.     The press release stated in pertinent part:

ELK GROVE VILLAGE, IL, May 13, 2010--Lime Energy Co. (NASDAQ: LIME), a leading provider of energy efficiency solutions, today announced its results for the three-month period ended March 31, 2010. "Consolidated revenue was $11.8 million, a decrease of $1.9 million from the $13.7 million earned during the first quarter of 2009" stated David Asplund, Chief Executive Officer. . . .

**Results for the three-month period ended March 31, 2010:**

•       Revenue of $11.8 million, a $1.9 or 13.9% decrease when compared to $13.7 million for the first quarter of 2009.

•       Gross profit of $1.9 million, a $900,000 decrease from the $2.8 million earned during the first quarter of 2009.

•       Gross profit margin of 15.7% as compared to 20.4% earned during the first quarter of 2009.

•       Loss from continuing operations of $4.7 million, compared to a loss from continuing operations of $3.2 million for the three-month period ended March 31, 2009.

•       Net loss available to common stockholders of $4.7 million, an increase of $500,000 or 12.8% when compared to the $4.2 million loss for the first quarter of 2009.

•       Adjusted EBITDA loss of $4.1 million, an increase of $2.4 million compared to the $1.7 million loss recorded for the first quarter of 2009.

•       Basic and diluted loss per common share from continuing operations of $0.20 as compared to $0.30 per share for the first quarter of 2009.

•       Basic and diluted loss per common share of $0.20 per share versus a loss of $0.38 per share for the first quarter of 2009.

28.     The Company's Form 10-Q for its fiscal first quarter of 2010 also contained Sarbanes-Oxley ("SOX") certifications signed by Defendants Asplund and Mistarz, who each certified:

1.      I have reviewed this quarterly report on Form 10-Q of Lime Energy Co. (the "Registrant");

2.      Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.      Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the Registrant as of, and for, the periods presented in this report;

4.      The Registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the Registrant and have:

a.   designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the Registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b.   designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c.   evaluated the effectiveness of the Registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d.   disclosed in this report any change in the Registrant's internal control over financial reporting that occurred during the Registrant's most recent fiscal quarter (the Registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the Registrant's internal control over financial reporting; and

5.      The Registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the Registrant's auditors and the Audit Committee of the Registrant's Board of Directors (or persons performing the equivalent functions):

a.   all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the Registrant's ability to record, process, summarize and report financial information; and

b.   any fraud, whether or not material, that involves management or other employees who have a significant role in the Registrant's internal controls over financial reporting.

29.     Defendants Asplund and Mistarz also certified pursuant to SOX the following on the Company's Form 10-K:

I, (the undersigned), certify pursuant to 18 U.S.C. §1350, as adopted pursuant to §906 of the Sarbanes-Oxley Act of 2002, that to the best of my knowledge and belief:

1.      The Quarterly Report Under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 on Form 10-Q for the Quarterly Period ended March 31, 2010 fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

2.      The information contained in the Quarterly Report Under Section 13 or 15(d) of the Securities Exchange Act of 1934 on Form 10-Q for the Quarterly Period ended March 31, 2010 fairly presents, in all material respects, the financial condition and results of operations of Lime Energy Co. and its subsidiaries.

30.     Defendants Asplund and Mistarz each executed a substantially similar Sarbanes-Oxley certification in each of the Company's Form 10-K's and Form 10-Q's during the Class Period, through and including the filing of Lime's Form 10-Q for the first quarter of fiscal 2011, on May 12, 2011.

31.     After Defendant Asplund stepped down as the Company's Chief Executive Officer in May 2011, Defendants O'Rourke and Mistarz each executed a substantially similar Sarbanes-Oxley certification in each of the Company's Form 10-K's and Form 10-Q's filed during the remainder of the Class Period.

32.  **2010 Second Quarter:**  On August 10, 2010, Lime both filed its Form 10-Q for the second quarter of fiscal 2010, for the time period ending June 30, 2010, and issued a press release announcing its financial and operating results for the second quarter of fiscal 2010.  The Form 10-Q and press release contained identical material information.

33.  This second quarter 2010 10-Q SEC filing and press release were both published when the Company was headquartered in Elk Grove Village, Illinois.

34.  The Company's Form 10-Q filing for the second quarter of 2010 was signed by Defendants Asplund and Mistarz.

35.  The press release stated in pertinent part:

ELK GROVE VILLAGE, IL, August 10, 2010--Lime Energy Co. (NASDAQ: LIME), a leading provider of energy efficiency solutions, today announced its results for the three-month and six-month periods ended June 30, 2010. "The second quarter came in better than expected," stated David Asplund, Chief Executive Officer, "driven by new initiatives we began investing in last year. These initiatives, combined with our existing businesses and strategic cost management, delivered overall revenue growth and improved operating leverage demonstrating the power of our diversified service platform."

"Our consolidated revenue for the second quarter of 2010 increased $1.7 million or 10.8% when compared to year earlier period," continued Mr. Asplund. . . .

**Results for the three-month period ended June 30, 2010:**

- Revenue of $17.5 million, a $1.7 million or 10.8% increase when compared to $15.8 million for the second quarter of 2009.

- Gross profit of $4.2 million, a $1.3 million increased from the $2.8 million earned during the second quarter of 2009.

- Gross profit margin of 23.9% as compared to 18.0% earned during the second quarter of 2009.

- Loss from continuing operations of $2.0 million, compared to a loss from continuing operations of $3.4 million for the three-month period ended June 30, 2009.

- Net loss available to common stockholders of $2.0 million, compared to a loss of $4.7 million for the second quarter of 2009.

- Adjusted EBITDA loss of $1.4 million, compared to the $2.1 million loss recorded for the second quarter of 2009[].

- Basic and diluted loss per common share from continuing operations of $0.09 as compared to $0.31 per share for the second quarter of 2009.

- Basic and diluted loss per common share of $0.09 per share versus a loss of $0.36 per share for the second quarter of 2009.

**Results for the six-month period ended June 30, 2010:**

- Revenue of $29.3 million, a $0.2 million or 0.7%, decrease from the $29.5 million earned during the first six months of 2009.

- Gross profit of $6.0 million, a $0.4 million or 7.1%, increase from $5.6 million earned during the first six months of 2009.

- Gross profit margin of 20.6% compared to 19.1% for the first half of 2009.

- Loss from continuing operations of $6.7 million, an increase of $91 thousand or 1.4% compared to a loss of $6.6 million for the year earlier period.

- Net loss available to commons stockholders of $6.7 million, a reduction of $2.2 million or 24.1%, compared to $8.9 million for the six-month period ended June 30, 2010.

- Adjusted EBITDA loss of $5.5 million, compared to the $3.8 million loss recorded for the six-month period ended June 30, 2009[].

- Basic and diluted loss per common share from continuing operations of $0.29 as compared to $0.71 per share for the six-month period ended June 30, 2009.

- Basic and diluted loss per common share of $0.29 per share versus a loss of $0.80 per share for the six-month period ended June 30, 2009.

36.     The Company's Form 10-Q for its fiscal second quarter of 2010 also contained

SOX certifications signed by Defendants Asplund and Mistarz.

37.     **2010 Third Quarter:**  On November 8, 2010, Lime both filed its Form 10-Q for

the third quarter of fiscal 2010, for the time period ending September 30, 2010, and issued a

press release announcing its financial and operating results for the third quarter of fiscal 2010.

The Form 10-Q and press release contained identical material information.

38.     This third quarter 2010 10-Q SEC filing and press release were both published when the Company was headquartered in Elk Grove Village, Illinois.

39.     The Company's Form 10-Q filing for the third quarter of 2010 was signed by Defendants Asplund and Mistarz.

40.     The press release stated in pertinent part:

**ELK GROVE VILLAGE, IL**, November 8, 2010--Lime Energy Co. (NASDAQ: LIME), a leading provider of energy efficiency solutions, today announced its results for the three-month and nine-month periods ended September 30, 2010. "The third quarter came in as expected driven again by new initiatives we began investing in last year", stated David Asplund, Chief Executive Officer. "These initiatives, combined with our existing businesses and strategic cost management, delivered positive adjusted EBITDA for the quarter."

"Our consolidated revenue for the third quarter of 2010 increased 33.7% when compared to the year earlier period demonstrating again the capability and increasing momentum of our diversified service platform," continued Mr. Asplund. . . .

**Results for the three-month period ended September 30, 2010:**

- Revenue of $28.1 million, a $7.1 million or 33.7% increase when compared to $21.0 million for the third quarter of 2009.

- Gross profit of $6.0 million, a $1.5 million or 33.4% increase from the $4.5 million earned during the third quarter of 2009.

- Gross profit margin of 21.3%, unchanged from the 21.3% earned during the third quarter of 2009.

- Loss from continuing operations of $382 thousand, compared to a loss from continuing operations of $3.5 million for the three-month period ended September 30, 2009.

- Net loss available to common stockholders of $382 thousand, compared to a loss of $4.2 million for the third quarter of 2009.

- Adjusted EBITDA increased $892 thousand to $182 thousand, compared to a loss of $704 thousand for the third quarter of 2009[].

- Basic and diluted loss per common share from continuing operations of $0.02 as compared to $0.24 per share for the third quarter of 2009.

- Basic and diluted loss per common share of $0.02 per share versus a loss of $0.26 per share for the third quarter of 2009.

   **Results for the nine-month period ended September 30, 2010:**

- Revenue of $57.4 million, a $6.9 million or 13.6%, increase from the $50.5 million earned during the first nine months of 2009.

- Gross profit of $12.0 million, a $1.9 million or 18.8%, increase from $10.1 million earned during the first nine months of 2009.

- Gross profit margin of 21.0% compared to 20.0% for the first nine months of 2009.

- Loss from continuing operations of $7.1 million, a decrease of $3.0 million or 29.8% compared to a loss of $10.1 million for the year earlier period.

- Net loss available to common stockholders of $7.1 million, a reduction of $5.9 million or 45.6%, compared to $13.1 million for the nine-month period ended September 30, 2010.

- Adjusted EBITDA loss of $5.3 million, compared to the $4.5 million loss recorded for the nine-month period ended September 30, 2009[].

- Basic and diluted loss per common share from continuing operations of $0.30 as compared to $0.87 per share for the nine-month period ended September 30, 2009.

- Basic and diluted loss per common share of $0.30 per share versus a loss of $0.98 per share for the nine-month period ended September 30, 2009.

41.     The Company's Form 10-Q for its fiscal third quarter of 2010 also contained SOX certifications signed by Defendants Asplund and Mistarz.

42.     **2010 Fourth Quarter and 2010 Fiscal Year End:**  On March 10, 2011, Lime both filed its Form 10-K for its fourth quarter of fiscal 2010 and its fiscal year ending December 31, 2010, and issued a press release announcing its financial and operating results for the same time periods.  The Form 10-K and press release contained identical material information.

43. This SEC Form 10-K filing for fiscal year end December 31, 2010 and press release were both published when the Company was headquartered in Elk Grove Village, Illinois.

44. The Company's Form 10-K filing for its fiscal year end December 31, 2010 was signed by Defendants Asplund and Mistarz.

45. The press release stated in pertinent part:

**ELK GROVE VILLAGE, IL**, March 10, 2011--Lime Energy Co. (NASDAQ: LIME), a leading provider of energy efficiency and renewable energy solutions, today announced its results for the three and twelve month periods ended December 31, 2010. "The fourth quarter of 2010 highlights the 'Power of the Platform'" stated David Asplund, Chief Executive Officer of Lime Energy. "It illustrates what we have been saying for a while, that the key to us generating sustained profitability is to deliver strong revenue growth, hold or improve our gross margins and control the growth of our SG&A. During the 4th quarter last year we increased our revenue by 89%, while decreasing our SG&A by 4.5% and increasing our gross margin by 6.4 percentage points, resulting in our first GAAP profit in the Company's history. On a full year basis, revenue grew 35%, gross margins by 15% while SG&A grew 8%. SG&A as a percentage of revenue fell to 27.0% of revenue compared to 33.8% for 2009. While this was a meaningful 20% reduction, we remain committed to reducing this to the mid-teens over the next several years. Since re-making the company in 2006, we have grown revenue three times faster than SG&A with revenue having grown at a 104.3% compounded annual growth rate (CAGR) while SG&A increased at a 29.9% CAGR. Getting to sustained profitability remains our top objective, and we took significant strides toward achieving this goal during 2010." . . .

**Results for the three-month period ended December 31, 2010**

- Revenue increased $18.0 million or 89.0%, to $38.3 million during the three-month period ended December 31, 2010, from $20.3 million for the same period in 2009.

- Gross profit increased $5.6 million or 159.3%, to $9.0 million during the fourth quarter of 2010, when compared to the $3.5 million earned during the fourth quarter of 2009. The gross margin for the fourth quarter of 2010 was 23.6% compared to 17.2% for the fourth quarter of 2009. . . .

- Income from continuing operations was $1.9 million for the fourth quarter of 2010, compared to a loss of $7.1 million for the fourth quarter of 2009.

- Net income was $1.9 million for the three-month period ended December 31, 2010, compared to a net loss of $6.5 million for three-month period ended December 31, 2009.

- The basic and diluted net income per share from continuing operations for the fourth quarter of 2010 was $0.08 per share compared to a net loss per share from continuing operations of $0.26 per share for the fourth quarter of 2009.

- Adjusted EBITDA[] was $2.3 million for the three-month period ended December 31, 2010, compared to an adjusted EBITDA loss of $3.4 million for the year earlier period.

**Results for the twelve-month period ended December 31, 2010**

- Revenue increased $24.9 million or 35.2%, to $95.7 million for the twelve-month period ended December 31, 2010, when compared to $70.8 million for the twelve-month period ended December 31, 2009.

- Gross profit increased $7.5 million or 54.7%, to $21.1 million for the twelve months ended December 31, 2010, when compared to $13.6 million for the twelve months ended December 31, 2009. The gross margin was 22.0% for 2010 compared to 19.2% for 2009. . . .

- The loss from continuing operations declined $12.0 million or 69.7%, to $5.2 million in 2010, from $17.3 million in 2009.

- Net loss decreased $12.8 million or 70.9%, to $5.2 million during the twelve-month period ended December 31, 2010, when compared to the $18.0 million net loss for the same period in 2009.

- The basic and diluted loss per share from continuing operations declined $0.90 to a loss of $0.22 per share for 2010, compared to a loss of $1.12 per share for 2009.

- Adjusted EBITDA[] loss decreased $4.9 million, or 61.9%, to $3.0 for 2010, when compared to a loss of $7.8 million for 2009.

46.     The Company's Form 10-K for its 2010 fiscal year ending December 31, 2010 also contained SOX certifications signed by Defendants Asplund and Mistarz.

47.     **2011 First Quarter:**  On May 12, 2011, Lime both filed its Form 10-Q for the first quarter of fiscal 2011, for the time period ending March 31, 2011, and issued a press release announcing its financial and operating results for the first quarter of fiscal 2011.  The Form 10-Q and press release contained identical material information.

48.     This first quarter 2011 10-Q SEC filing and press release were both published when the Company was headquartered in Elk Grove Village, Illinois.

49.     The Company's Form 10-Q filing for the first quarter of 2011 was signed by Defendants Asplund and Mistarz.

50.     The press release stated in pertinent part:

**ELK GROVE VILLAGE, IL**, May 12, 2011--Lime Energy Co. (NASDAQ: LIME), a leading provider of energy efficiency and renewable energy solutions,, today announced its results for the three-month period ended March 31, 2011. "We are pleased with our first quarter results that represent our highest reported first quarter revenues to date," stated David Asplund, Chief Executive Officer of Lime Energy. "Revenue increased in all of our markets relative to last year demonstrating again, the 'Power of the Platform'. . . . Most important, we continued to demonstrate financial leverage with our operating loss declining almost 22% and our adjusted EBITDA loss declining almost 25% during the quarter as a result of the higher revenue, improvement in our gross margin, increased operational efficiencies and a 25% decline in SG&A as a percentage of revenue." . . . .

**Results for the three-month period ended March 31, 2011:**

- Revenue increased $7.2 million, or 60.7%, to $19.0 million when compared to $11.8 million for the first quarter of 2010.

- Gross profit increased $1.8 million, or 94.3%, to $3.6 million from $1.9 million for the first quarter of 2010.

- Gross profit margin of 19.0% compared to 15.7% earned during the first quarter of 2010. . . .

- Operating loss declined $1 million, or 21.6% to $3.7 million from $4.7 million for the year earlier period.

- Adjusted EBITDA loss declined $1 million, or 24.6%, to $3.1 million from $4.1 million for the first quarter of 2010[].

- Basic and diluted loss per common share of $0.15 per share versus a loss of $0.20 per share for the first quarter of 2010.

51.     The Company's Form 10-Q for its fiscal first quarter of 2011 also contained SOX certifications signed by Defendants Asplund and Mistarz.

52. **2011 Second Quarter:** On August 8, 2011, Lime both filed its Form 10-Q for the second quarter of fiscal 2011, for the time period ending June 30, 2011, and issued a press release announcing its financial and operating results for the second quarter of fiscal 2011. The Form 10-Q and press release contained identical material information.

53. The Company's Form 10-Q filing for the second quarter of 2011 was signed by Defendants O'Rourke and Mistarz.

54. The press release stated in pertinent part:

**HUNTERSVILLE, NC**, August 8, 2011--Lime Energy Co. (NASDAQ: LIME), a leading provider of energy efficiency and renewable energy solutions, today announced its results for the three-month and six-month periods ended June 30, 2011. "Our results for the second quarter and first half of the year were in line with our expectations," stated John O'Rourke, Lime Energy's CEO and President. . . .

**Results for the three-month period ended June 30, 2011:**

- Revenue increased $6.8 million, or 38.6%, to $24.3 million when compared to $17.5 million for the second quarter of 2010.

- Gross profit increased $0.3 million, or 7.3%, to $4.5 million from $4.2 million for the second quarter of 2010.

- Gross profit margin of 18.5% compared to 23.9% earned during the second quarter of 2010. . . .

- Operating loss increased $1.5 million to $3.6 million from $2.1 million for the year earlier period. The second quarter of 2011 included a $1.1 million restructuring charge.

- The net loss increased $1.5 million to $3.5 million from $2.0 million for the three-month period ended June 30, 2010.

- Adjusted EBITDA loss increased $0.4 million to $1.8 million from $1.4 million for the second quarter of 2010[].

- Basic and diluted loss per common share of $0.15 per share versus a loss of $0.09 per share for the second quarter of 2010. The restructuring reserve contributed $0.05 per share to the loss during the first half of 2011.

**Results for the six-month period ended June 30, 2011:**

- Revenue increased $13.9 million, or 47.5%, to $43.2 million when compared to $29.3 million for the first half of 2010.

- Gross profit increased $2.1 million, or 34.1%, to $8.1 million from $6.0 million for the first half of 2010.

- Gross profit margin of 18.8% compared to 20.6% earned during the first half of 2010. . . .

- Operating loss increased $0.5 million to $7.3 million from $6.8 million for the year earlier period. The first half of 2011 included a $1.1 million restructuring charge.

- The net loss increased $0.5 million to $7.2 million from $6.7 million for the six-month period ended June 30, 2010.

- Adjusted EBITDA loss decreased $0.6 million to $4.9 million from $5.5 million for the first half of 2010[].

- Basic and diluted loss per common share of $0.30 per share versus a loss of $0.28 per share for the first half of 2010. The restructuring reserve contributed $0.05 per share to the loss during the first half of 2011.

55. The Company's Form 10-Q for its fiscal second quarter of 2011 also contained SOX certifications signed by Defendants O'Rourke and Mistarz.

56. **2011 Third Quarter:** On November 8, 2011, Lime both filed its Form 10-Q for the third quarter of fiscal 2011, for the time period ending September 30, 2011, and issued a press release announcing its financial and operating results for the third quarter of fiscal 2011. The Form 10-Q and press release contained identical material information.

57. The Company's Form 10-Q filing for the third quarter of 2011 was signed by Defendants O'Rourke and Mistarz.

58. The press release stated in pertinent part:

HUNTERSVILLE, NC, November 8, 2011--Lime Energy Co. (NASDAQ: LIME), a leading provider of energy efficiency and clean energy solutions, today announced its results for the three-month and nine-month periods ended September 30, 2011. "The business continues to perform well and is lining up for a strong finish to the year," commented John O'Rourke, Lime Energy's President

and CEO. "Increased revenue, improved gross margins and controlled growth in our SG&A contributed to generate the first GAAP profitable third quarter in the Company's history. The restructuring we implemented in May is already paying dividends in the form of increased internal efficiencies as evidenced by the 1.9% increase in SG&A expense while revenues increased by 14.7% over the same period. . . .

**Results for the three-month period ended September 30, 2011:**

- Revenue increased $4.1 million, or 14.7%, to $32.2 million when compared to $28.1 million for the third quarter of 2010.

- Gross profit increased $1.1 million, or 18.0%, to $7.1 million from $6.0 million for the third quarter of 2010.

- Gross profit margin of 21.9% compared to 21.3% earned during the third quarter of 2010. . . .

- Operating income of $344 thousand as compared to an operating loss of $431 thousand for the third quarter of 2010. The 2011 third quarter results included a $172 thousand restructuring charge, $115 thousand of which was the loss on the sale of real estate.

- The net income of $359 thousand compared to a net loss of $382 thousand for the three-month period ended September 30, 2010.

- Adjusted EBITDA increased $1.1 million to $1.3 million when compared to $180 thousand for the third quarter of 2010[].

- Basic and diluted income per common share of $0.02 per share versus a loss of $0.02 per share for the third quarter of 2010.

**Results for the nine-month period ended September 30, 2011:**

- Revenue increased $18.0 million, or 31.4%, to $75.4 million when compared to $57.4 million for the first nine months of 2010.

- Gross profit increased $3.1 million, or 26.1%, to $15.1 million from $12.0 million for the first nine months of 2010.

- Gross profit margin of 20.1% compared to 21.0% earned during the first nine months of 2010. . . .

- Operating loss declined by $303 thousand to $6.9 million from $7.2 million for the nine-month period ended September 2010. The first nine months of 2011 included a $1.3 million restructuring charge.

- The net loss declined by $234 thousand to $6.9 million from $7.1 million for the nine-month period ended September 30, 2010.

- Adjusted EBITDA loss decreased $1.7 million to $3.6 million from $7.1 million for the first nine months of 2010[].

- Basic and diluted loss per common share of $0.29 per share versus a loss of $0.30 per share for the first nine months of 2010. The restructuring reserve contributed $0.05 per share to the loss during the first nine months of 2011.

59.     The Company's Form 10-Q for its fiscal third quarter of 2011 also contained SOX certifications signed by Defendants O'Rourke and Mistarz.

60.     **2011 Fourth Quarter and 2011 Fiscal Year End:**  On March 8, 2012, Lime issued a press release announcing its financial and operating results for both its fourth quarter 2011 and its fiscal year ending December 31, 2011.  On March 16, 2012, Lime similarly filed with the SEC its Form 10-K containing its financial and operating results for both its fourth quarter of fiscal 2011 and its fiscal year ending December 31, 2011.  The Form 10-K and press release contained identical material information.

61.     The Company's Form 10-K filing for its fiscal year end December 31, 2010 was signed by Defendants O'Rourke, Asplund and Mistarz.

62.     The press release stated in pertinent part:

**HUNTERSVILLE, NC**, March 8, 2012 - Lime Energy Co. (NASDAQ: LIME), a leading provider of clean energy solutions, today announced its results for the three and twelve month periods ended December 31, 2011. . . .

**Results for the three-month period ended December 31, 2011**

- Revenue increased $6.3 million, or 16.5%, to $44.7 million from $38.3 million for the fourth quarter of 2010.

- Gross profit increased $232 thousand, or 2.6%, to $9.3 million from $9.0 million earned during the fourth quarter of 2010.

- Operating income declined $6.5 million to a loss of $4.7 million from income $1.8 million in 2010. The 2011 fourth quarter included a $5.8 million impairment loss related to the write-down of the goodwill resulting from acquisitions associated with the C&I market.

- Net loss increased $6.6 million, to $4.7 million from net income of $1.9 million for the fourth quarter of 2010.

- Basic and diluted loss per common share of $0.20 per share versus income of $0.08 per share for the fourth quarter of 2010. The impairment loss contributed $0.25 per share to the basic and diluted loss per share during the fourth quarter of 2011.

- Adjusted EBITDA[] declined $156 thousand, or 6.7%, to $2.2 million from $2.3 million for the fourth quarter of 2010.

**Results for the twelve-month period ended December 31, 2011**

- Revenue increased $24.4 million, or 25.5%, to $120.1 million from $95.7 million for 2010.

- Gross profit increased $3.4 million, or 16%, to $24.4 million, from $21.1 million in 2010.

- The operating loss increased $6.2 million to $11.6 million from $5.4 million in 2010. The 2011 results include a $1.3 million restructuring charge and $5.8 million impairment loss related to the write-down of the goodwill resulting from acquisitions associated with the C&I market.

- The net loss increased $6.3 million, or 121%, to $11.6 million from $5.2 million in 2010.

- Basic and diluted loss per common share of $0.49 per share versus a loss of $0.22 per share for 2010. The restructuring charge and impairment loss contributed $0.30 to the 2011 basic and diluted loss per share.

- Adjusted EBITDA[] loss declined $1.6 million, or 52.0%, to $1.4 million from $3.0 million in 2010.

63.     The Company's Form 10-K for its 2011 fiscal year ending December 31, 2011 also contained SOX certifications signed by Defendants O'Rourke and Mistarz.

64.     **2012 First Quarter:**  On May 10, 2012, Lime both filed its Form 10-Q for the first quarter of fiscal 2012, for the time period ending March 31, 2012, and issued a press release announcing its financial and operating results for the first quarter of fiscal 2012.  The Form 10-Q and press release contained identical material information.

65.     The Company's Form 10-Q filing for the first quarter of 2012 was signed by Defendants O'Rourke and Mistarz.

66.     The press release stated in pertinent part:

**HUNTERSVILLE, NC**, May 10, 2012--Lime Energy Co. (NASDAQ: LIME), a leading provider of energy efficiency and clean energy solutions, today announced its results for the three-month period ended March 31, 2012. "The first quarter results were in line with our expectations for what has traditionally been our seasonally slowest quarter of the year," commented John O'Rourke, Lime Energy's President and CEO. . . .

**Results for the three-month period ended March 31, 2012**

- Revenue declined 3.5% or $659 thousand, to $18.3 million from $19.0 million for the first quarter of 2011.

- Gross profit declined 8.1% or $291 thousand to 3.3 million from $3.6 million for the first quarter of 2011.

- Gross profit margin of 18.1% compared to 19.0% earned during the first quarter of 2011.

- Operating loss of $4.5 million compared to an operating loss of $3.7 million for the first quarter of 2011.

- A net loss of $4.6 million compared to a net loss of $3.7 million for the three-month period ended March 31, 2011.

- Adjusted EBITDA loss of $3.5 million compared to a loss of $3.1 million for the first quarter of 2011[].

- Basic and diluted loss of $0.19 per share versus a loss of $0.15 per share for the first quarter of 2011.

67.     The Company's Form 10-Q for its fiscal first quarter of 2012 also contained SOX certifications signed by Defendants O'Rourke and Mistarz.

A.      **The Truth Begins to Emerge**

68.     The fact that Lime's previous financial reporting was materially inaccurate was initially, and only partially, disclosed on July 17, 2012. On this date, Lime filed with the SEC a Form 8-K and issued an identical press release. The Form 8-K stated in relevant part:

**Item 4.02(a)         Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review**

On Sunday, July 15, 2012, the Audit Committee of the Board of Directors of Lime Energy Co. (the "Company") determined that the Company's consolidated financial statements on Form 10-K for the periods ended December 31, 2010 and December 31, 2011 and quarterly report on Form 10-Q for the period ended March 31, 2012 (the "affected financial statements") may no longer be relied upon.  The Audit Committee made that determination based on the results of a partial internal review conducted by the Company's management which was concluded on Friday, July 13, 2012.

Based on the results of that partial internal review the Company's management and the Audit Committee believe that some portion of the Company's revenue was improperly recorded.  In some cases, it appears that non-existent revenue may have been recorded.  In other cases, it appears that revenue may have been recorded earlier than it should have been.  The review did not turn up any indication of improper customer billing.

The Company cannot make a reliable estimate of the magnitude of the misreported revenue or the effects on the affected financial statements at this time; the Company does, however, currently believe that the cumulative adjustment to revenue for the affected financial statements will not exceed $15 million.  The Company does expect that the misreporting may potentially require restatement of all of the affected financial statements.

The Company, under the supervision of the Audit Committee and with the assistance of outside counsel, is currently conducting an investigation of the misreporting.

The Audit Committee and Lime's principal financial and accounting officer have discussed the matters disclosed in this report with Lime's independent accountants, BDO USA, LLP.

69.     The Company noted that the "internal" review" was only partial as of July 17, 2012, and that the investigation was ongoing and was not yet completed.

70.     July 17, 2012 was a Tuesday.  The Form 8-K SEC filing noted that it was on Sunday July 15, 2012 that "the Audit Committee of the Board of Directors of Lime Energy Co. [] determined that the Company's consolidated financial statements on Form 10-K for the

periods ended December 31, 2010 and December 31, 2011 and quarterly report on Form 10-Q for the period ended March 31, 2012 . . . may no longer be relied upon."

71.    On Monday July 16, 2012, after the Audit Committee "determination" but before the Company's public disclose of the previously published false statements, Lime's publicly traded common stock declined by 5.6% from a closing price on the prior Friday, July 13, 2012, of $2.15 per share to a closing price on July 16, 2012 of $2.03 per share, on volume of 187,600 shares.    The volume was 285% more than the 50-day average daily trading volume of approximately 48,700.

72.    Upon information and belief, the Audit Committee's Sunday July 15, 2012 "determination" that Lime's SEC filings could no longer be relied upon leaked to certain individuals/entities who traded upon that confidential information prior to its public disclosure.

73.    After the Company's July 17, 2012 public announcement, Lime's stock price plunged 44.83%, from the prior close of $2.03 to a close of $1.12 on July 17, 2012.  Volume was approximately 2.2 million shares, more than 40 times the 50-day average daily trading volume.

74.    Lime's statements and SEC filings during the Class Period were materially false and misleading, and omitted material adverse information concerning the Company's business, operations and prospects, in that, among other things:   (i) the Company's accounting for revenues was material improper and misleading; (ii) the Company's financial statements during the Class Period did not provide a fair presentation of the Company's finances and operations; (iii) as a result, the Company's financial results were not prepared in accordance with GAAP; (iv) the Company lacked adequate internal and financial controls; and (v) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

75.     As a result of Defendants' materially false and misleading statements and material omissions during the Class Period, Plaintiff and the Class have suffered millions of dollars in damages.

## LIME'S VIOLATIONS OF GAAP

76.     The Company's financial statements and results during the Class Period were false and misleading, as such financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's improper accounting for its revenues, in violation of GAAP rules.

77.     GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time.  Regulation S-X (17 C.F.R. § 210.4 01(a) (1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate.  Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. § 210.10-01(a).

78.     The fact that Lime announced that it will restate its financial statements, and informed investors that these financial statements should not be relied upon is an admission that they were false and misleading when originally issued (APB No. 20, 7-13; SFAS No. 154, 25).

79.     Given these accounting irregularities, the Company announced financial results that were in violation of GAAP and the following principles:

(a)     The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, 10);

(b)    The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. 1, 34);

(c)    The principle that "financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1, 40);

(d)    The principle that "financial reporting should provide information about an enterprise's financial performance during a period" was violated (FASB Statement of Concepts No. 1, 42);

(e)    The principle that "financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it" was violated (FASB Statement of Concepts No. 1, 50);

(f)    The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, 58-59);

(g)    The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, 79); and

(h)    The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated (FASB Statement of Concepts No. 2, 95).

80.    The adverse information concealed by Defendants during the Class Period and detailed above was in violation of Item 303 of Regulation S-K under the federal securities laws (17 C.F.R. §229.303).

## SCIENTER ALLEGATIONS

81.    As alleged herein, the Individual Defendants acted with scienter in that Individual Defendants knew that the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

82.    As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Lime, their control over, receipt and/or modification of Lime's allegedly materially misleading statements and omissions, and/or their positions with the Company which made them privy to confidential information concerning Lime, participated in the fraudulent scheme alleged herein.

83.    The ongoing fraudulent scheme described herein could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

84.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Lime under *respondeat superior* and agency principles.

85.     The volume of Lime's continually repeated materially false and misleading statements, in its SEC filings, in its violations of GAAP, and in false SOX certifications, as compared to the realities of its overall financial results and business operations and operational risk management controls (with the operational risk management controls either non-existence or not being implemented) demonstrates a cogent and compelling inference of scienter.

## NO SAFE HARBOR

86.     The statutory safe harbor provided for certain forward-looking statements does not apply to any of the false statements alleged in this Complaint.  None of the statements alleged herein are "forward-looking" statements and no such statement was identified as a "forward-looking statement" when made.  Rather, the statements alleged herein to be false and misleading all relate to facts and conditions existing at the time the statements were made. Moreover, cautionary statements, if any, did not identify important factors that could cause actual results to differ materially from those in any forward-looking statements.

87.     In the alternative, to the extent that the statutory safe harbor does apply to any statement pleaded herein which is deemed to be forward-looking, the Defendants are liable for such false forward-looking statements because at the time each such statement was made, the speaker actually knew and/or recklessly disregarded the fact that such forward-looking statements were materially false or misleading and/or omitted facts necessary to make statements previously made not materially false and misleading, and/or that each such statement was authorized and/or approved by a director and/or executive officer of Lime who actually knew or recklessly disregarded the fact that each such statement was false and/or misleading when made. None of the historic or present tense statements made by the Individual Defendants was an assumption underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such an assumption underlying or relating to any

projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the Individual Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## LOSS CAUSATION/ECONOMIC LOSS

88. During the Class Period, the Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated Lime's stock price and operated as a fraud or deceit on purchasers of Lime's common stock by misrepresenting the Company's financial condition and accounting, operational and risk practices. Once the Defendants' misrepresentations and fraudulent conduct were disclosed to the market, Lime's stock price reacted negatively as the artificial inflation was removed from it. As a result of his purchases of Lime stock during the Class Period, Plaintiff and other members of the Class suffered economic loss.

89. The Defendants' false and misleading statements had the intended effect and caused Lime stock to trade at artificially inflated levels throughout the Class Period.

90. As investors and the market became aware of Lime's prior misstatements and omissions and that its financial statements could not be relied upon, Lime's stock price reacted negatively, dropping dramatically, damaging the members of the Class.

91. The timing and magnitude of Lime's common stock price decline negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
### FRAUD ON THE MARKET DOCTRINE

92.     At all relevant times, the market for Lime stock was an efficient market for the following reasons, among others:

a.     Lime securities met the requirements for listing, and were listed and actively traded on NASDAQ, a highly efficient market;

b.     During the Class Period, Lime's stock was actively traded, demonstrating a very strong presumption of an efficient market;

c.     As a regulated issuer, Lime filed periodic public reports with the SEC and NASDAQ during the Class Period;

d.     Lime regularly communicated with public investors via established market communication mechanisms;

e.     Lime regularly issued press releases which were carried by national newswires. Each of these releases was publicly available and entered the public marketplace.

f.     Lime securities were followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace;

g.     Unexpected material news about Lime was rapidly reflected in and incorporated into the Company's stock price during the Class Period, and

93.     As a result, the market for Lime's common stock promptly digested current information with respect to the Company from all publicly-available sources and reflected such information in Lime's stock price. Under these circumstances, all purchasers of Lime common

stock during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices and a presumption of reliance applies.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

94.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased common stock of Lime during the Class Period and who were damaged thereby.   Excluded from the Class are Defendants, the current and former officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

95.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the Class located throughout the United States.  Throughout the Class Period, Lime securities were actively traded on NASDAQ (an open and efficient market) under the symbol "LIME."   As of May 7, 2012, the Company had approximately 24 million shares outstanding.   Record owners and other members of the Class may be identified from records maintained by Lime and/or its transfer agents and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

96.     Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

97.     Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

98.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether the misstatements alleged herein were made with scienter;

(c)     whether statements made by the Defendants to the investing public during the Class Period misrepresented material facts about the business, prospects, sales, operations and risk controls of Lime; and

(d)     to what extent the members of the Class have sustained damages and the proper measure of damages.

99.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this suit as a class action.

## COUNT I

### Violations of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

100.     Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

101.     In addition to the duties of full disclosure imposed on Defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, they each had a duty to promptly disseminate

truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. § 210.01 *et seq.*) and S-K (17 C.F.R. § 229.10 *et seq.*) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and performance so that the market prices of the Company's publicly traded securities would be based on truthful, complete and accurate information.

102.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase and/or sell Lime's securities at artificially inflated and distorted prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, individually and as a group, took the actions set forth herein.

103.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations, internal controls, and future prospects of Lime as specified herein.

104.     These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Lime's value and performance and continued substantial growth, and the existence and efficacy of its operational controls, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Lime and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged

in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Lime's securities during the Class Period.

105.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of the Individual Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; (4) each of the Individual Defendants was aware of the Company's dissemination of information to the investing public that they knew or recklessly disregarded was materially false and misleading; and (5) each of the Individual Defendants culpably participated in the wrongful conduct alleged herein.

106.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Lime's financial condition and future business prospects from the investing public and supporting the artificially inflated or distorted price of its securities.  As demonstrated by Defendants' material misstatements and material omissions of the Company's financial condition and business prospects, and its accounting, operational and risk procedures, throughout the Class Period, Defendants, if they did not have actual knowledge

of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

107.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for Lime's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Lime's publicly-traded securities were artificially inflated or distorted, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the Company's securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Lime securities during the Class Period at artificially high prices and were damaged thereby.

108.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Lime's financial results, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired Lime securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

109.    By virtue of the foregoing, Lime and the Individual Defendants each violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

110.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's securities during the Class Period.

## COUNT II

### For Violations of Section 20(a) of The Exchange Act
### Against the Individual Defendants

111.     Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein.

112.     The Individual Defendants acted as controlling persons of Lime within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of aspects of the Company's revenues, earnings and operational systems and controls, and dissemination of information to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

113.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company; formulated and carried out or were provided with and had unlimited access to information about, among other things, Lime' revenues, earnings, business prospects and operational internal controls; and, therefore, is presumed to have had, and did have, the power to control or influence the particular conduct giving rise to the securities violations as alleged herein, and exercised the same.

114.     The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff

to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

115.    As set forth above, Lime and the certain Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

116.    By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein.

117.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

118.    This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment as follows:

A.    Determining that this action is a proper class action, and designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

August 15, 2012

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**

/s/ Adam J. Levitt
Adam J. Levitt
Theodore B. Bell
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603
Telephone:  312/984-0000
Facsimile:   312/984-0001

**WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ LLP**
Gregory Mark Nespole
Robert B. Weintraub
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600

*Attorneys for Plaintiff*